**NEWS GROUP BOSTON, INC., Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

**Civ. A. No. 91–12049–MA.**

United States District Court,
D. Massachusetts.

Aug. 3, 1992.

MEMORANDUM AND ORDER

MAZZONE, District Judge.

News Group Boston, Inc., publisher of the Boston Herald ("Boston Herald"), filed this suit for injunctive relief against the National Railroad Passenger Corporation ("Amtrak"), requesting that certain information be made available to it pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* The Boston Herald and Amtrak have filed cross-motions for summary judgment.

For the reasons set forth below, the Boston Herald's motion for summary judgment is granted in part and denied in part. Similarly, Amtrak's motion for summary judgment is denied in part and granted in part.

## I. PROCEDURAL HISTORY

Plaintiff Boston Herald filed two FOIA requests with Amtrak seeking: 1) information regarding payroll; and 2) information relating to disciplinary proceedings against employees. The December 27, 1990 FOIA request sought the following:

> A copy of the Amtrak payroll for the Boston division, including but not limited to, the employee's full name, job title, job site, hourly rate, weekly or monthly salary. In addition, we are requesting the total amount of overtime pay and any and all other wages earned by these employees in 1990.

On January 2, 1991, the Boston Herald requested the following:

> A copy of any record reflecting the number of appeals of disciplinary action imposed by Amtrak on employees belonging to the Brotherhood of Locomotive Engineers for the past seven years.... In addition, we are requesting any records indicating the [sic] how many appeals resulted in the overturning or lessening of disciplinary action against employees who are members of the BLE.

This request also contained a slight revision to the prior request for payroll information.[1]

Brenda M. Cotter and Barbara A. Lenk, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for plaintiff.

Karen Wuest, National R.R. Passenger Corp., Washington, D.C. and Michael A. Fitzhugh, Fitzhugh & Associates, Boston, Mass., for defendant.

---

1. The January letter made the following request; "A computer tape or diskette copy of the entire Amtrak payroll. This information should include, but not limited to employee name, job title, home address, job site, hourly rate, weekly or monthly salary and date of hire...."

Amtrak refused these requests by letters dated February 15 and 26, 1991. On March 7, 1991, the Boston Herald appealed these decisions in a timely fashion. Their appeal was denied by Amtrak in April, 1991. The Boston Herald then filed this suit in August, 1991, challenging these denials.

## II. DISCUSSION

■ Summary judgment is an appropriate vehicle for resolving disputes where there are no genuine issues as to any of the material facts. Fed.R.Civ.P. 56(c). Since the parties in this instance are in agreement as to the material facts, the case is appropriate for summary judgment, and I need only resolve the questions of law. Denial of a request for records pursuant to FOIA is subject to *de novo* judicial review. *See* 5 U.S.C. § 552(a)(4)(B).

■ The purpose of the FOIA reflects " 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Dept. of Air Force v. Rose*, 425 U.S. 352, 360–361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). "[C]ourts have interpreted the disclosure provisions generously, in order to achieve the FOIA's basic aim: sunlight." *Aronson v. Internal Revenue Service*, 973 F.2d 962, 966 (1st Cir.1992). "[E]xemptions are narrowly drawn, in favor of disclosure." *Id.* While Amtrak is not a federal agency, 45 U.S.C. § 522, its operation is governed by statute, 45 U.S.C. § 501 *et seq.*, and it is specifically subject to the provisions of the FOIA.[2] 45 U.S.C. § 546(g). Amtrak has refused to produce the requested payroll documents, arguing that the information is subject to the FOIA exemptions 2, 4, 5 and 6. 5 U.S.C. § 552(b)(2), (4), (5) and (6). Amtrak has also refused to produce many of the requested records of the disciplinary proceedings, arguing the information is sub-

ject to exemption 2, and has redacted certain information from other documents, citing exemption 6. 5 U.S.C. § 552(b)(2), (6). The Boston Herald maintains that none of the information it has requested falls within any of these exemptions.

### 1. *Disciplinary Appeals*

Plaintiff requested records for the previous seven years which reflected the "number of appeals of disciplinary action imposed by Amtrak" on those employees which were members of the Brotherhood of Locomotive Engineers ("BLE"). Also requested were records indicating the number of appeals which "resulted in the overturning or lessening of disciplinary action" against employees belonging to BLE.

Initially, Amtrak identified one responsive document, "Statement of Case Handling Year–To–Date Cumulative Liability," ("Case Handling Statement") which contains statistics relating to the annual BLE appeal caseload. A Case Handling Statement is maintained for each of the three levels of appeal: 1) Division Manager; 2) Director of Labor Relations; and 3) Arbitration or "Board" Level. These are used by the management of Amtrak's Labor Relations Department to monitor caseload. Specifically, it shows the number of *cases* handled each year, which Amtrak states is not the same as the number of appeals filed or the number of appeals handled each year. Amtrak refused to disclose the Case Handling Statements, claiming they are subject to exemption 2, which protects documents relating to routine internal practices.

Approximately one year later, Amtrak discovered certain case records which log each BLE case as it is docketed at each of the three appeal levels. The logs are maintained individually for each appeal level and indicate the date on which a case was docketed, the case number and its disposi-

---

**2.** Amtrak maintains a policy which states that it "will protect the confidentiality of all personnel information in its files and records." Maintenance and Disclosure of Personnel Information. This policy establishes guidelines to ensure confidentiality is maintained during collection, retention and disclosure of employee information.

I note this policy is *not* set forth in statutory language and therefore does not exempt Amtrak from the FOIA. *Compare Aronson v. Internal Revenue Service*, 973 F.2d 962 (1st Cir.1992) (holding that tax statute governing disclosure of tax information, *not* the FOIA, permits IRS not to disclose).

tion. The Director level records cross-reference the Division level case numbers.[3] Amtrak produced these logs, but redacted information which it considered not responsive. In addition, Amtrak withheld employee names subject to exemption 6. Since the Boston Herald does not seek these names and did not address the issue, I will not rule on it.

### a. Case Handling Statements

Exemption 2 applies to information which relates "solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Supreme Court in *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), examined the scope of exemption 2 in the context of a FOIA request for case summaries of honors and ethics hearings maintained in the United States Air Force Academy's Honor and Ethics Code files. "[T]he general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Id.* at 369–70, 96 S.Ct. at 1603. After reviewing the history of exemption 2, the Court stated it was not applicable to "matters subject to such a genuine and significant public interest." *Id.* However, the Court cautioned that exemption 2 *would* apply if disclosure of the information might "risk circumvention of agency regulation." *Id.* The Court determined the case summaries were information of public interest and their disclosure would not risk circumvention of the Air Force's regulations. Thus, the case summaries were not subject to exemption 2.

The Court's analysis has evolved into a two part test: 1) whether the information relates to "predominantly internal agency workings [or whether there is] a legitimate public interest in disclosure;" and 2) whether the disclosure of the information " 'significantly risks circumvention of agency regulations or statutes.' " *Common-*

*wealth of Massachusetts v. United States Dept. of Health & Human Services*, 727 F.Supp. 35, 38–39 (D.Mass.1989) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C.Cir. 1981) (en banc)). At issue here is the release of documents concerning BLE employee appeals of disciplinary rulings. Disciplinary proceedings and their operation may have an impact on the safety of Amtrak's rail service. The Affidavit of David Armstrong[4] references a hearing which took place on September 13, 1984 before the House of Representatives' subcommittee of the Committee on Government Operations entitled "Amtrak Abuse of Its Employee Disciplinary Process (Part I)." As mentioned earlier, "safe and efficient" rail service is specifically enumerated in Amtrak's statutory duties, 45 U.S.C. § 501a(5), and is subsidized by taxpayer funds.

While acknowledging the Case Handling Statement is responsive to the Boston Herald's Request, Amtrak argues that "the form in which the information is maintained renders it of no public use." Amtrak charges that "[t]he public simply can not learn anything about the actual number of BLE appeals or their disposition from this document." These statistics are maintained to monitor Amtrak's internal workload. Amtrak asserts the number of appeals cannot be distilled from the statistics in this report. Amtrak argues that the Case Handling Statements at issue will not be helpful in illuminating its safety record and expresses concern that the document could be misunderstood or misinterpreted to state the *actual* number of BLE appeals. The Boston Herald counters that it is not Amtrak's prerogative to withhold information which it fears cannot be "used" correctly by the public.

■ While the documents contain information relating to the internal workings of Amtrak, they also contain information of interest to the public, as stated above. Amtrak has forwarded instructions on the contents of the Case Handling Statement

---

**3.** While most appeals begin at the Division level, some are initiated at the Director level and therefore do not contain a cross-reference.

**4.** David Armstrong, a reporter for the Boston Herald, made the FOIA requests.

which the Boston Herald can follow. Since there is no risk of circumvention of Amtrak regulations through disclosure of Case Handling Statements, and legitimate public interest exists in these documents, I hold they do not fall under exemption 2.

#### b. *The Case Logs*

Amtrak produced certain case logs but redacted non-responsive information. The information withheld as non-responsive includes: 1) information relating to the nature and location of the underlying offense; 2) the name and title of the employee; 3) the original discipline giving rise to the appeal and the date on which it was imposed; 4) estimates of accrued liability pending the outcome of the claim; 5) monies paid in settlement; 6) the name of the and arbitrator and/or union representative; 7) the dates on which the appeal was reviewed, analyzed for timeliness, discussed, briefed, answered, heard and/or requested to be sent or sent to the next level; and 8) the ultimate disposition or storage of the underlying files. The Boston Herald challenges the redaction.

 In addition to the *number* of appeals, the Boston Herald's FOIA letter requested information which would indicate whether the disciplinary action was lessened or overturned as a result of the appeal. Unless the case logs specifically indicate that the discipline was "lessened" or "overturned," the Boston Herald must be provided with information as to the nature of the original discipline and the discipline subsequent to the appeal. Therefore, the information relating to the nature and location of the underlying offense, the original discipline giving rise to the appeal, and the ultimate disposition of the case (not the storage of the underlying files) should be disclosed if the logs do not specifically state "lessened" or "overturned" as mentioned above. All other redacted information which was challenged by the Boston Herald is non-responsive to the FOIA request and need not be provided by Amtrak.

#### 2. *Payroll*

 Amtrak argues exemption 2, which protects information relating "solely to internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), applies to the payroll codes, job site codes and job title codes listed on the payroll. The *Vaughn* index produced by Amtrak describes each of the three codes as follows: 1) the site code identifies the location to which the employee is assigned; 2) the payroll code indicates one of sixteen payrolls to which the employee is assigned; and 3) the job title code (5 digits) designates the supervisory level, department, functional specialty and title assignment of the employee with respect to managers, and with respect to agreement-covered employees, the code identifies the job and rules governing frequency of payment and rate factors for calculations. Applying the First Circuit's test in *Commonwealth of Massachusetts*, the payroll information does relate to "predominantly internal agency workings." *Id.* at 38–39. Therefore, the payroll code is subject to exemption 2. Job titles are a separate item from the job title codes; the titles are clearly not "predominantly internal" but the codes appear to be and are protected from disclosure under exemption 2. The site code, however, appears to contain information for which there is a legitimate public interest, particularly since sites are not separately listed. Since disclosure of this information does not risk circumvention of agency regulations or statutes, the site codes are not subject to exemption 2.

 Exemption 4 of the FOIA provides that "trade secrets and commercial or financial information obtained from a person and privileged or confidential" is protected from disclosure. 5 U.S.C. § 552(b)(4). The First Circuit in *9 to 5 Organization v. Board of Governors of the Federal Reserve*, 721 F.2d 1 (1st Cir.1983) articulated a two part test to determine whether commercial or financial information is "confidential" under exemption 4. Information is confidential if its disclosure either 1) "impair[s] the Government's ability to obtain necessary information in the future;" or 2)

"cause[s] substantial harm to the competitive position of the person from whom the information was obtained." *Id.* at 8 (quoting *National Parks I*[5], 498 F.2d at 770 (footnote omitted)). The First Circuit, however, recognized (as did the court in *National Parks I*) that Congress may have other governmental interests which they sought to protect in enacting exemption 4, and cited *Comstock International v. Export–Import Bank of the United States,* 464 F.Supp. 804 (D.D.C.1979) which discussed another governmental interest, "program effectiveness."[6] The *Comstock* court held that the bank set forth "specific factual or evidentiary material" to show that disclosure of loan agreements by the bank, an independent federal agency, would impair the bank's effectiveness and justified treating the documents as confidential. *Id.* at 808.

Amtrak argues that the payroll information is protected under this prong of exemption 4 as disclosure of its labor costs may threaten its overall productivity and ability to compete in the marketplace. Amtrak claims any party seeking to contract for services could present a FOIA request, learn the wages Amtrak workers are paid, and undermine Amtrak's bargaining position. To support this contention, Amtrak offers the affidavits of three of its managers. The Affidavit of Raymond Lanman, Assistant Vice President for Corporate Development, states, "[i]t is my opinion that if Amtrak's labor costs were disclosed to these prospective purchasers, Amtrak would not be able to negotiate as favorable a profit margin as it has in the past." The

Affidavit of Eric von Schilgen, Senior Director of Sales Development, offers a similar opinion. He adds that it is his opinion that disclosure of labor costs will "severely handicap Amtrak's competitive bargaining position." The Affidavit of Rebecca Stiehl, Director of Compensation and Benefits, states "disclosure of Amtrak salaries could encourage raiding of Amtrak's workforce by other businesses and entities with related industry positions.... [i]t is my opinion that disclosure of the payroll data can be expected to negatively impact overall employee morale, inhibiting the quality of Amtrak's service." These statements do not constitute "specific factual or evidentiary material" to justify nondisclosure. *Comstock,* 464 F.Supp. at 808.[7]

Exemption 5 of the FOIA provides that "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency" are protected from disclosure. 5 U.S.C. § 552(b)(5). In *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979), the Supreme Court recognized a qualified privilege for confidential commercial information, stating that the theory behind this exemption is that the Government will be "placed at a competitive disadvantage or that the consummation of the contract may be endangered." *Id.* at 360, 99 S.Ct. at 2812. The First Circuit in *Government Land Bank v. General Services Administration,* 671 F.2d 663 (1st Cir. 1982)[8] set out a two part test for determining whether a document falls under exemption 5: 1) "whether the document falls

---

**5.** *National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974) (National Parks I), *aff'd in part and rev'd in part sub nom. National Parks and Conservation Ass'n v. Kleppe,* 547 F.2d 673 (D.C.Cir.1976) (National Parks II).

**6.** Amtrak argues that the program effectiveness prong allows the "obtained from a person" requirement of exemption 4 to include information which is "not submitted to the government but rather generated by it through [the bank's] participation in the negotiation process." *Comstock,* 464 F.Supp. at 807. Since I find this is not a confidential document, I do not reach this issue.

**7.** The second part of the test asks if disclosure would cause "substantial harm to the competitive position of the person from whom the information was obtained." *9 to 5,* 721 F.2d at 8. Here the "person" would be Amtrak's employees or its union (*Comstock* involved an outside third party). The same reasoning regarding competitiveness would apply here.

**8.** *Government Land Bank* involved a FOIA request to the General Services Administration ("GSA") for a realty appraisal report which GSA received from a professional real estate appraiser. The court found that pre-sale disclosure would harm the agency's commercial interests and held that the information was exempt.

within an area of Congressional concern and 2) is not the sort of material that private litigants can get as a matter of course." *Id.* at 666. The First Circuit interpreted *Merrill* as holding that exemption 5 "protects the government when it enters the marketplace as an ordinary commercial buyer or seller." *Id.* at 665. The protection is limited to "what is essential" and there is an explicit time limitation for these documents. *Id.* " '[T]he rationale for protecting such information expires as soon as the contract is awarded or the offer withdrawn.' " *Id.* at 665 n. 2 (quoting *Merrill*, 443 U.S. at 360, 99 S.Ct. at 2812).

■■■■ Amtrak argues that disclosure of payroll information will enable third parties, with whom it enters into outside contracts[9] to learn its labor costs and thereby reduce its competitiveness. In support, Amtrak offer the affidavits of several managerial personnel. *See supra* p. 1269. It is possible that the release of payroll information might be of some aid to potential competitors. However, these opinions, without more, do not constitute enough evidence to show that the payroll information, if disclosed, would " 'significantly harm the *government's* commercial interest.' " *Government Land Bank*, 671 F.2d at 666 (quoting *Merrill*, 443 U.S. at 363, 99 S.Ct. at 2813) (emphasis added). Since payroll information does not fall within an area of clear Congressional concern, it is not subject to exemption 5.

Exemption 6 of the FOIA provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C. § 552(b)(6). The First Circuit has applied the Supreme Court's analysis in *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (discussing the factors which must be considered in balancing the public interest in disclosure with the privacy interests in-

volved) to determine the degree of protection offered by exemption 6.

[A]part from the degree of privacy protection, the Supreme Court clearly stated that the public interest in disclosure does not turn on the purposes for which the request was made or on the identity of the party requesting the information, but rather

"must turn on the nature of the requested document and its relationship to "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.' " ... This basic policy of " 'full agency disclosure unless information is exempted under clearly delineated statutory language,' " indeed focuses on the citizens' right to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct...."

*Federal Labor Relations Authority v. U.S. Dept. of Navy, Naval Com. Unit*, 941 F.2d 49, 56 (1st Cir.1991) ("FLRA") (quoting *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772–773, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989)). In analyzing whether a union's request for the Navy to disclose home addresses of federal employees in their bargaining units, the First Circuit in *FLRA* balanced the privacy and public interests

without regard to the identity and special purposes of the requester, and without regard to public interests other than the "core FOIA purpose" of opening agency operations to public scrutiny.... Knowing "what the government is up to" regarding labor practices is a FOIA-cognizable public interest.

9. These include contracts to perform overhaul and assembly of railroad equipment, to run special trains and to market limited passenger train service.

*FLRA*, 941· F.2d at 57 (quoting *Reporters Committee*, 489 U.S. at 772–773, 109 S.Ct. at 1481). The court found that the disclosure of the addresses, when the names were already available to the union through their FOIA request, would be an unwarranted invasion of privacy.

The parties cited two cases involving payroll information, both decided after *Reporters Committee*. In *Painting and Drywall Work Preservation Fund v. Dept. of Housing and Urban Development*, 936 F.2d 1300 (D.C.Cir.1991), a union cooperative made a FOIA request to the Department of Housing and Urban Development ("HUD"), seeking the payroll records of construction workers on federal construction projects, including the names, addresses, social security numbers, job classifications, hourly pay, hours worked, wages, fringe benefits, and deductions.[10] HUD responded to the request by releasing the payroll records, but, invoking exemption 6, redacted the name, address and social security numbers. The·union cooperative filed suit to require the disclosure of the redacted material, claiming the material was not exempt. The district court agreed, and ordered the material disclosed. The District of Columbia Circuit, however, reversed, explaining that

> [t]he specific public interest on which *Reporters Committee* requires us to focus is "the citizen's right to be informed about what their government is up to." [citations omitted]. As information that might reveal the failure of contractors to comply with relevant laws does not in itself cast light on what HUD is up to, we can find no obvious public interest in its disclosure that is relevant to this analysis.

*Painting and Drywall*, 936 F.2d at 1303. The court found that the "attenuated public interest in disclosure does not outweigh the construction workers' significant privacy interest in the requested information"

and held HUD's redaction of information was proper. *Id.* at 1303.

The Second Circuit came to a similar conclusion in *Hopkins v. U.S. Dept. of Housing and Urban Development*, 929 F.2d 81 (2nd Cir.1991). As in *Painting and Drywall*, a union made a FOIA request to HUD for the payroll records of construction workers hired by private contractors on a HUD-assisted project. HUD released the records, but deleted the names, addresses and social security numbers, citing exemption 6. The union challenged this redaction of information, but the Second Circuit upheld it, explaining "that disclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official." *Hopkins*, 929 F.2d at 88 (emphasis in original). The court felt the disclosure of names and addresses would not illuminate HUD's performance in enforcing federal wage laws; it was too "attenuated a relationship to governmental activity." *Id.*

As directed by the First Circuit in *FLRA*, the privacy and public interests must be balanced with an eye toward opening the operations of an agency to the scrutiny of the public. *FLRA*, 941 F.2d at 57. The Boston Herald argues that any purported privacy interest in nondisclosure of information is outweighed by the public's interest in and right to oversee operations of a company which is subsidized by taxpayer monies. This information, the Boston Herald asserts, will help the taxpayers to see whether Amtrak is fulfilling its statutory duty of providing safe and efficient service, which includes spending taxpayer funds efficiently and effectively. The Boston Herald also raises the issue of Amtrak's wage practices as being an issue of public interest as evidenced by the recent threat of a strike over wages in the Northeast.[11]

---

**10.** The wages of these workers, who are employed by private contractors, must comply with federal statutes, such as the Davis–Bacon Act, 40 U.S.C. §§ 276a–276a–5. HUD is one of the agencies which enforces compliance with this Act.

**11.** Congress approved emergency legislation putting an end to the nationwide freight rail shutdown on June 25, 1992 and averted a threatened strike of Amtrak. Farley, Maggie, "Wrong Side of the Track? Hardly anyone likes how railway issue was settled" THE BOSTON GLOBE, June 27, 1992, ECONOMY, at 31.

Amtrak argues the requested wage information is an invasion of their employees' privacy. It voices concern that "creditors, co-workers, prospective employers and general interlopers," as well as any business or fund-raising organization could also then use FOIA to request this information and use it to harass their employees. Amtrak also charges that disclosure of the payroll records would not advance the public interest since payroll information, considered independently of other financial data, will not inform the public about the efficiency of Amtrak's operations. Amtrak further argues there is no evidence that releasing employee names, social security numbers, job titles and locations will have any bearing on its economic efficiency or shed light on the workings of the government.

Both *Painting and Drywall* and *Hopkins* are helpful in balancing the privacy and public interests in this instance. As mentioned earlier, Amtrak is not a federal agency, but its operations are subsidized by taxpayers, and it is regulated by statute. Amtrak is required to report directly to the President and to Congress. 45 U.S.C. § 548. Among Amtrak's statutory duties are: 1) "[i]mplementation of strategies to achieve immediately maximum productivity and efficiency consistent with safe and efficient service," 45 U.S.C. § 501a(5); and 2) Congressional oversight of employee compensation and incentives, 45 U.S.C. § 647. These duties indicate a much closer relationship between Amtrak's wages and the operations of governmental activity than were the wages of construction workers hired by private contractors but subject to the Davis–Bacon Act in *Painting and Drywall* and *Hopkins*. As for Amtrak's concern that the FOIA may be used to "harass" its employees, it must be remembered that the FOIA "permits every citizen, whether well, or *badly*, motivated to obtain the information it makes public." *Aronson*, 973 F.2d at 966 (emphasis added). Payroll records directly reveal information about Amtrak and its fulfillment of these duties.

However, there are certain privacy rights of employees implicated here as well. The information regarding names and addresses (social security numbers [12] were not requested) is unnecessary to evaluate Amtrak's compliance with Congress's directive. Plaintiffs do not need to know who the employees are and where they live to evaluate the way in which they are compensated. Amtrak also argues that job titles should be protected—some jobs only have one employee, so it will be easy to identify the person. While it may be possible to determine individual employees from their job titles alone, eliminating the job title information would render the wages listed almost useless, as Plaintiff would not know for what type of work the person is being compensated. Job titles, therefore, are not subject to exemption 6. Names and addresses are subject to exemption 6, as disclosure of that information would be an unwarranted invasion of privacy. The remaining information does not fall under exemption 6 and must be disclosed.

## III. CONCLUSION

My rulings on the requested information which was the subject of these cross-motions for summary judgment are summarized below.

1) The Case Handling Statements are not subject to exemption 2 and must be disclosed.

2) Unless the case logs specifically indicate the discipline imposed was "lessened" or "overturned," Amtrak must provide information as to the nature and location of the underlying offense, the original discipline giving rise to the appeal, and the ultimate disposition of the case.

3) The payroll codes and job title codes are protected from disclosure pursuant to exemption 2.

4) The names and addresses of employees on the payroll are protected from disclosure pursuant to exemption 6.

---

12. If social security numbers were requested, they would be protected from disclosure. Since the employee number is simply a social security number preceded by a zero, this would also be exempt for the reasons that follow.

5) The remainder of the payroll information does not fall within exemptions 2, 4, 5 or 6 and must be disclosed.

SO ORDERED.