**[J-75A-2020 and J-75B-2020] [MO: Saylor, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| CHESTER WATER AUTHORITY, | : | No. 44 EAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 4/25/2019 at No. 801 CD 2018 |
| v. | : | affirming the Order of the Office of |
| | : | Open Records entered on 5/14/2018 |
| | : | at No. AP 2018-0194. |
| PENNSYLVANIA DEPARTMENT OF | : | |
| COMMUNITY AND ECONOMIC | : | ARGUED:  September 16, 2020 |
| DEVELOPMENT, | : | |
| | : | |
| Appellee | : | |
| | | |
| CHESTER WATER AUTHORITY, | : | No. 45 EAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 4/25/2019 at No. 1090 CD 2018 |
| v. | : | affirming the Order entered on |
| | : | 7/11/2018 of the Office of Open |
| | : | Records at No. AP 2018-0247. |
| PENNSYLVANIA DEPARTMENT OF | : | |
| COMMUNITY AND ECONOMIC | : | ARGUED:  September 16, 2020 |
| DEVELOPMENT, | : | |
| | : | |
| Appellee | : | |

## DISSENTING OPINION

**JUSTICE WECHT**                                          **DECIDED:  April 29, 2021**

The Majority concludes that "communications exchanged between a Commonwealth agency and a private consultant" cannot be shielded from disclosure under the Right-to-Know Law's ("RTKL")[1] predecisional deliberations exception.  Maj. Op.

---

[1]     65 P.S. §§ 67.101-67.3104.

at 12. I disagree. The Commonwealth Court struck the proper balance between an agency's confidential pursuit of expert advice in furtherance of its governmental functions and the public's interest in government transparency. Because the frank exchange of ideas on complex issues is crucial to the smooth operations of government, I do not believe that the RTKL requires an agency to reveal its confidential communications with, or the proprietary work product of, consultants with whom it contracts for professional services under the particular circumstances before us.

Section 708 of the RTKL exempts from disclosure, *inter alia*, any "record that reflects . . . [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between" the same, and those of "another agency, including . . . any research, memos or other documents used in the predecisional deliberations." 65 P.S. § 67.708(b)(10)(i)(A). By its plain terms, the exemption would appear to cover the work product and communications of Econsult Solutions, Inc., and its legal and financial subcontractors under the "other documents used" catch-all. Indeed, these "other documents"—consisting of legal and financial analyses and recommendations—were central to the Department of Community and Economic Development's ("the Department") confidential, predecisional deliberations regarding the City of Chester's recovery pursuant to the Financially Distressed Municipalities Act ("Act 47").[2] Although the pertinent provision of the RTKL requires that a record must reflect the "internal" deliberations of an agency in order for the exemption to apply, it does not explicitly exclude from its protections records that were generated by an external actor under contract with the agency or communications between the two,

---

[2]     53 Pa.C.S. §§ 11701.101-11701.712.

like those at issue here. In fact, the General Assembly expressly contemplated that records possessed by "a party with whom the agency has contracted to perform a government function on behalf of the agency . . . shall be considered a public record of the agency" subject to disclosure unless otherwise exempt under the Act. 65 P.S. § 67.506(d).

While the Department urges this Court to adopt a more expansive reading of the exemption, the Chester Water Authority urges a far narrower construction, by which a record cannot be deemed reflective of "internal" deliberations if it was generated—or at any point possessed—by a non-governmental entity. Given the reasonableness of the parties' dueling textual interpretations, I find the statute's contemplation of exemptions for records reflecting "internal" deliberations to be ambiguous.

To discern the General Assembly's intent, we may benefit by looking to the abundant federal authority interpreting the Freedom of Information Act ("FOIA"), the federal analogue from which the RTKL draws its inspiration. In *Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1 (2001), the United States Supreme Court analyzed the reach of FOIA's "Exemption 5," which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify for the exemption, a record must satisfy two conditions: "its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. Exemption 5, like Subsection 708(b)(10)(i)(A) of the RTKL, codifies the deliberative process privilege, which encompasses "documents

reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Lab. Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

Although the High Court in *Klamath* acknowledged that the plain language of Exemption 5 was silent about communications with non-governmental entities, it recognized that several of the federal Courts of Appeals have held that, in some circumstances, documents prepared by individuals outside of the Government might qualify as "intra-agency" for purposes of the exemption. The Court cited Justice Scalia's dissent in *Department of Justice v. Julian*, 486 U.S. 1 (1988), the facts of which are not relevant here. In *Julian*, Justice Scalia, joined by Justices White and O'Connor, explained that "the most natural meaning of the phrase 'intra-agency memorandum'" in Exemption 5 "is a memorandum that is addressed both to and from employees of a single agency—as opposed to an 'inter-agency memorandum,' which would be a memorandum between employees of two different agencies." *Id.* at 18 n.1 (Scalia, J., dissenting). He cautioned, however, that "[t]he problem with this interpretation is that it excludes many situations where Exemption 5's purpose of protecting the Government's deliberative process is plainly applicable." *Id.*

"Consequently," Justice Scalia observed, "the Courts of Appeals have uniformly rejected" requests to limit the exemption solely to those records that are generated by, and kept within, a federal agency. *Id.* (citing *Ryan v. Dep't of Justice*, 617 F.2d 781, 789-91 (D.C. Cir. 1980) (applying the exemption to information furnished by Senators to the Attorney General concerning judicial nominations); *Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665 (1st Cir. 1982) (applying the exemption to reports prepared by

outside consultants)). Pertinently, the *Julian* dissenters considered lower court decisions extending Exemption 5 to outside consultants' work product to be "supported by a permissible and desirable reading of the statute." *Id.* Justice Scalia explained:

> It is textually possible and much more in accord with the purpose of [Exemption 5], to regard as an intra-agency memorandum one that has been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency—*e.g.*, in a capacity as employee or consultant to the agency, or as employee or officer of another governmental unit (not an agency) that is authorized or required to provide advice to the agency.

*Id.*

In support of the lower courts' view "that the exemption extends to communications between Government agencies and outside consultants hired by them," the *Klamath* Court noted that "the records submitted by outside consultants in such cases played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done." *Klamath*, 532 U.S. at 10. Although the Court acknowledged that, as independent contractors, the consultants at issue "were not assumed to be subject to the degree of control that agency employment could have entailed," the Court declined to interpret those decisions "as necessarily assuming that an outside consultant must be devoid of a definite point of view when the agency contracts for its services." *Id.* Rather, the Court found significant the fact that consultants in typical cases do not represent their own interests or those of any other client when advising an agency. *See id.* at 11 ("Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do."); *id.* at 12 ("Consultants whose communications have typically been held exempt have not been communicating with the Government in their own

interest or on behalf of any person or group whose interests might be affected by the Government action addressed by the consultant. In that regard, consultants may be enough like the agency's own personnel to justify calling their communications 'intra-agency.'")).

Because the result in *Klamath* did not turn on the consultant-employee analogy, the Court simply assumed that consultant reports might qualify as intra-agency records for purposes of the deliberative process exemption. But in leaving it to the lower courts to hash out whether to extend the exemption to non-governmental parties, the Court admonished against "draining" Exemption 5's first condition—*i.e.*, "that the communication be 'intra-agency or inter-agency'"—"of its independent vitality." *Id.* at 12. The federal appellate courts largely, though not universally, have continued to extend the deliberative process privilege to the work of outside consultants who contract with governmental agencies. *See, e.g., Gov't Land Bank*, 671 F.2d 663; *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724 (4th Cir. 2013); *Nat'l Inst. of Military Justice v. Dep't of Justice*, 512 F.3d 677 (D.C. Cir. 2008); *Hoover v. Dep't of the Interior*, 611 F.2d 1132 (5th Cir. 1980); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70 (2d Cir. 1979). *But see Lucaj v. Fed. Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017) (declining to apply Exception 5 to letters and memoranda shared with federal agencies by foreign governments). Only the United States Court of Appeals for the Ninth Circuit explicitly has rejected the so-called "consultant corollary," though that recent decision was vacated by a grant of reargument *en banc*. *See Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046, 1058 (9th Cir. 2019), *rehearing en banc granted*, 948 F.3d 952 (Jan. 30, 2020).

I find Justice Scalia's dissent in *Julian*, and the consistent rationales relied upon by the federal courts, to be persuasive. Accordingly, I would apply that reasoning to the circumstances here to deny the compelled disclosure of the responsive records held by the Department, insofar as those documents reflect predecisional deliberations between the Department and the consultants with whom they have contracted for professional services.

In its initial prospectus, which was incorporated into a professional services contract with the Department, Econsult specifically identified—and appended a budget allotting payment for the services of—a financial consulting firm (Fairmount Capital Advisors, Inc.) and legal counsel (McNees, Wallace & Nurick, LLC) that would act collectively with Econsult as the Act 47 Coordinator for the City of Chester. In assenting to the contract, the Department tasked the team with using its considerable expertise to create a recovery plan for the City involving a blend of both financial and legal analysis. Although the team was to operate independently, it also was obliged to provide the Department with progress reports and recommendations as part of the agency's confidential deliberations over the City's path toward long-term solvency. Moreover, according to the Department's Open Records Officer, Econsult's final report "was created solely for" the Department, and the Department did not "share the [Econsult] Report . . . with outside parties." Agency Affirmation of Jennifer Fogarty, 2/14/2018, at 2 ¶ 6.

The consultants also agreed not to enter into any additional contracts without the Department's approval. For all intents and purposes, then, Econsult, Fairmount, and McNees were exclusive agents of the Department throughout the deliberative stages of

the Act 47 recovery process. Assuming that the responsive records appropriately reflected the Department's "predecisional deliberations," there is little doubt that they would be exempt from disclosure under Subsection 708(b)(10)(i)(A) but for the Act 47 Coordinator's designation as an agency "consultant."

The Majority acknowledges the necessity of weighing the costs and benefits of "promot[ing] the free exchange of deliberative communications against the [RTKL's] overarching policy of openness." Maj. Op. at 11. But in rejecting the Department's plea for a narrowly-tailored "consultant corollary," the Majority short shrives the consequences of full disclosure. As reflected in the present dispute, the need for such an exemption may be especially acute in the Act 47 context, where the Department must make difficult choices from a range of likely unpopular, even contentious, options to facilitate the recovery of financially distressed municipalities. To force the release of expert advice relied upon by the Department in making such fraught decisions undoubtedly would have a chilling effect on its earnest efforts to satisfy its statutory mandate moving forward. And to do so while deliberations over aspects of the recovery process remain ongoing would be doubly pernicious given the risks that such disclosures might pose to the strategies being contemplated.

More broadly, consultants might self-censor or decline to render their services at all in light of reasonable concerns that their contracted-for confidentiality during the deliberative process no longer can be guaranteed by an agency under the RTKL in light of today's decision. This Court should not overlook the deleterious effects of deterring agency professionals from seeking the unvarnished advice of non-governmental experts. The cost to taxpayers—particularly those denizens who reside in financially distressed

municipalities—from the loss of this expertise might not be trivial in the long run. On balance, I do not believe that the General Assembly intended this result. For these reasons, I respectfully dissent.

Chief Justice Baer joins this dissenting opinion.