**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JORGE ALEJANDRO ROJAS,
   *Plaintiff-Appellant*,

   v.

FEDERAL AVIATION
ADMINISTRATION,
   *Defendant-Appellee.*

No. 17-55036

D.C. No.
2:15-cv-05811-CBM-SS

ORDER AND
AMENDED OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted June 6, 2018
Pasadena, California

Filed April 24, 2019
Amended June 18, 2019

Before: Kim McLane Wardlaw and Morgan Christen,
Circuit Judges, and Donald W. Molloy,* District Judge.

---

 * The Honorable Donald W. Molloy, United States District Judge
for the District of Montana, sitting by designation.

Order;
Opinion by Judge Molloy;
Partial Concurrence and Partial Dissent by Judge Christen

**SUMMARY**[**]

**Freedom of Information Act**

The panel reversed the district court's order granting summary judgment in favor of the Federal Aviation Administration ("FAA") in a case concerning a Freedom of Information Act ("FOIA") request.

The plaintiff submitted the FOIA request after the FAA notified him that he was ineligible for an Air Traffic Control Specialist position based on his performance on a screening test called the Biographical Assessment.

The panel held that the FAA failed to conduct a search reasonably calculated to uncover all relevant documents in response to plaintiff's FOIA request.

The panel held that the records at issue were not "intra-agency" documents, and FOIA's Exemption 5 did not apply. Joining the Sixth Circuit, the panel rejected the consultant corollary theory, adopted by the district court and some sister circuits, which uses a functional interpretation of Exemption 5 that treats documents produced by an agency's third-party consultant as "intra-agency" memorandums.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected plaintiff's argument that the FAA had an obligation under FOIA to retrieve any responsive documents, such as the underlying data to the summaries.

Judge Christen concurred in part and dissented in part. She concurred with the majority that plaintiff cannot use FOIA to access materials that the FAA does not actually possess, and that the scope of the FAA's in-house search for responsive documents was inadequate. She dissented from the majority's rejection of the consultant corollary doctrine adopted by seven sister circuits. She would adopt the corollary to shield work product generated by the government's outside consultants in anticipation of litigation.

## COUNSEL

Michael William Pearson (argued), Curry Pearson & Wooten PLC, Phoenix, Arizona, for Plaintiff-Appellant.

Alarice M. Medrano (argued), Assistant United States Attorney; Dorothy A. Schouten, Chief, Civil Division; United States Attorney's Office, Los Angeles, California; for Defendant-Appellee.

## ORDER

The opinion filed on April 24, 2019, and reported at 922 F.3d 907 (9th Cir. 2019), is amended at footnote 1. The amended opinion is filed simultaneously with this Order, along with the unchanged dissent. The parties may file petitions for rehearing and petitions for rehearing en banc in response to the amended opinion, as allowed by the Federal Rules of Appellate Procedure.

## OPINION

MOLLOY, District Judge:

Jorge Alejandro Rojas ("Rojas") appeals the district court's order granting summary judgment in favor of the Federal Aviation Administration ("FAA"). The case concerns a Freedom of Information Act ("FOIA") request Rojas submitted to the FAA after the FAA notified him that he was ineligible for an Air Traffic Control Specialist position based on his performance on a screening test called the Biographical Assessment ("BA"). The district court held that (1) the FAA fulfilled its FOIA obligations by conducting a reasonable search for the requested information and (2) the FAA properly withheld nine pages of summary documents pursuant to Exemption 5 as inter-agency memoranda subject to the attorney work-product doctrine. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

## I. Background

### A. The Biographical Assessment

In November 2012, the FAA hired Applied Psychological Techniques, Inc. ("APTMetrics"), a human resources consulting firm, to review and recommend improvements to the FAA's hiring process for Air Traffic Control Specialists.

In 2013, APTMetrics developed the BA test to replace the FAA's existing Air Traffic Selection and Training Test. The BA is an initial screening test that determines whether an applicant possesses certain characteristics empirically shown to predict success in an Air Traffic Control Specialist position. These characteristics include flexibility, risk-tolerance, self-confidence, dependability, resilience, stress tolerance, cooperation, teamwork, and rules application. The FAA implemented the BA for the first time during the 2014 hiring cycle for Air Traffic Control Specialist applicants. In Summer and Fall 2014, the FAA revised the BA, and APTMetrics performed validation work related to the revised BA (the "2015 BA"). The 2015 BA was subsequently incorporated in the 2015 Air Traffic Control Specialist hiring process.[1]

---

[1] Rojas requests judicial notice of a transcript of a congressional hearing from June 15, 2016. In general, we may take judicial notice of publicly available congressional records, including transcripts of congressional hearings. *See* Fed. R. Evid. 201(b)(2); *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (providing that judicial notice may be taken of public records). But judicial notice is not appropriate here because the testimony at issue is "not relevant to the resolution of this appeal." *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006).

In November 2014, the FAA Office of the Chief Counsel asked John Scott ("Scott"), then Chief Operating Officer of APTMetrics, to create "summaries and explanations" of its validation work on the 2015 BA in anticipation of litigation on the FAA's hiring practices. Scott provided the Office of the Chief Counsel with an initial summary in December 2014 and a supplement in January 2015.

### B. Rojas's Application and FOIA Request

In early 2015, Rojas applied for an Air Traffic Control Specialist position with the FAA. During the application process, he completed the 2015 BA. On May 21, 2015, the FAA notified Rojas that he was ineligible for a position based on his responses to the BA. Rojas's rejection notification briefly described the BA and stated that the test was "independently validated by outside experts."

On May 24, 2015, Rojas emailed the FAA a FOIA request seeking "information regarding the empirical validation of the biographical assessment noted in [his] rejection notification [from the FAA]. This includes any report created by, given to, or regarding APTMetrics' evaluation and creation and scoring of the assessment." On June 18, 2015, the FAA, through the Office of the Chief Counsel, denied Rojas's FOIA request for documents on the empirical validation of the 2015 BA. The FAA reasoned that these records were, in part, protected as attorney work-product and therefore subject to Exemption 5 of FOIA. *See* 5 U.S.C. § 552(b)(5). On June 24, 2015, Rojas filed an administrative appeal contesting the FAA's denial of his FOIA request. On October 7, 2015, the FAA remanded Rojas's case to the Office of the Chief Counsel because the agency incorrectly searched for documents on the empirical validation of the 2014 BA, instead of the 2015 BA.

Pursuant to the remand, attorneys at the Office of the Chief Counsel reviewed records on the empirical validation of the 2015 BA. They located the following three documents: (1) a summary of the Air Traffic Control Specialist hiring process, dated December 2, 2014; (2) a summary of the 2015 BA, dated January 29, 2015; and (3) a summary of the validation process and results of the 2015 BA, dated September 2, 2015. All of these records were created by APTMetrics and are identified in the FAA's Vaughn Index.[2] The FAA denied Rojas's FOIA request for the second time on December 10, 2015, once again invoking Exemption 5 and the attorney work-product doctrine.

On July 31, 2015, Rojas filed a complaint in district court, alleging that the FAA withheld information on the empirical validation of the 2015 BA in violation of FOIA. On September 21, 2016, the district court ordered the FAA to disclose the three documents identified in its Vaughn Index for *in camera* review. The district court granted summary judgment in favor of the FAA on November 10, 2016, holding that the three responsive records were properly withheld under Exemption 5 as attorney work-product. The court also concluded that there was no genuine dispute of material fact that the FAA adequately searched for

---

[2] Agencies are typically required to submit a Vaughn Index in FOIA litigation. *See Vaughn v. Rosen*, 484 F.2d 820, 823–25 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). A Vaughn Index identifies the documents withheld, the FOIA exemptions claimed by the agency, and "why each document falls within the claimed exemption." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (en banc) (per curiam) (citation and internal quotation marks omitted).

relevant documents. Rojas timely appeals. *See* Fed. R. App. P. 4(a).

## II. Standard of Review

In FOIA cases, we review de novo a district court's order granting summary judgment. *Animal Legal Def. Fund*, 836 F.3d at 990. Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-moving party, there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## III.    Discussion

FOIA requires government agencies to "make . . . promptly available to any person," upon request, whatever "records" are possessed by the agency. 5 U.S.C. § 552(a)(3)(A). FOIA "was enacted to facilitate public access to [g]overnment documents" and "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citations and internal quotation marks omitted). An agency may avoid disclosure only if it proves that the requested documents fall within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(b)(1)–(9); *see also Lane v. Dep't of Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008). At issue on appeal is whether: (1) the FAA adequately searched for records in response to Rojas's FOIA request; (2) the FAA properly withheld three documents under Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5); and (3) the FAA properly construed the scope of Rojas's FOIA request.

## A.  Search for Responsive Documents[3]

Under FOIA, an agency responding to a request must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Hamdan v. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (citation and internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (emphasis in original) (citation and internal quotation marks omitted). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citation omitted). We conclude that the FAA failed to conduct a search reasonably calculated to uncover all relevant documents.

Rojas's FOIA request sought "information regarding the empirical validation" of the BA that was described in his rejection notice, including "any report created by, given to, or regarding APTMetrics' evaluation and creation and

---

[3] The FAA argues that the parties stipulated before the district court that "the only issue in the case concerned the legal basis for the FAA's decision to withhold the responsive records." While the parties "indicated their agreement that the only issue in the case concerned the legal basis for the FAA's decision to withhold the responsive records," Rojas argued before the district court that the FAA conducted an inadequate search, the district court held that Rojas failed to "show a genuine issue of material fact regarding whether the search conducted by the FAA was adequate under FOIA," and both parties briefed the issue on appeal and argued reasonableness at oral argument. Therefore, the reasonableness of the FAA's search is properly before the Court.

scoring" of the BA. In response, the Office of the Chief Counsel located summaries of: (1) the Air Traffic Control Specialist hiring process; (2) the 2015 BA; and (3) the validation process and results of the 2015 BA. All of these records were created by APTMetrics.

"[T]he government may demonstrate that it undertook an adequate search by producing reasonably detailed, nonconclusory affidavits submitted in good faith." *Lane*, 523 F.3d at 1139 (citation and internal quotation marks omitted). Affidavits must be "relatively detailed in their description of the files searched and the search procedures." *Zemansky*, 767 F.2d at 573 (internal quotation marks omitted). The agency must show that it searched for the requested records "using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The FAA's declarations did not sufficiently describe the agency's search procedures. The declaration of Yvette Armstead, the FAA's Assistant Chief Counsel, states that the agency "conducted a search for documents responsive to [Rojas]'s FOIA request" on two occasions—both initially and on remand from Rojas's administrative appeal. Armstead further explains that the search was "reasonably calculated to obtain responsive records" because attorneys at the Office of the Chief Counsel who provided legal advice on revisions to the Air Traffic Control Specialist hiring process "were asked to review their records." Attorneys located "[t]hree responsive documents" comprised of nine pages in total that "discuss[] the validation of the 2015 BA."

Armstead's declaration is conclusory. It omits relevant details, such as names of the attorneys who searched the relevant documents and the amount of time the Office of the Chief Counsel devoted to the search. *See Citizens Comm'n*

*on Human Rights*, 45 F.3d at 1328 (concluding that agency's search was adequate where its declaration stated that the agency spent over 140 hours reviewing documents in response to the plaintiff's FOIA request). The documents the FAA located included summaries of the Air Traffic Control Specialist hiring process, the 2015 BA, and the validation process and results of the 2015 BA. But summaries by necessity summarize something else; there is no indication that there was any search conducted for underlying documents. Thus, though Armstead's declaration establishes that appropriate employees were contacted and briefly describes the files that were discovered, it does not demonstrate that the FAA's search could reasonably be expected to produce the information requested—here, "information regarding the empirical validation of the biographical assessment noted in Rojas's rejection notification." Construing the facts in the light most favorable to Rojas, the FAA has not shown "that it undertook an adequate search," *Lane*, 523 F.3d at 1139.

## B. FOIA Exemption 5

Per Exemption 5, FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption allows the government to withhold records that are "normally privileged in the civil discovery context[,]" such as documents covered by the attorney work-product privilege. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). It prevents FOIA from being used to circumvent litigation privileges. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801–02 (1984).

The threshold question under Exemption 5 is whether the records qualify as "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001). By its plain terms, Exemption 5 applies only to records that the government creates and retains. However, a number of our sister circuits have adopted a functional interpretation of Exemption 5 that treats documents produced by an agency's third-party consultant as "intra-agency" memorandums. This functional interpretation, called the consultant corollary, recognizes that a third-party consultant may perform certain functions on behalf of a government agency. The consultant corollary treats communications from third-party consultants as "intra-agency" memorandums under Exemption 5, as if those communications came from the agency itself.

The district court seems to have relied on the consultant corollary in determining that the FAA properly invoked Exemption 5 in this case. It reasoned that "courts have upheld the application of FOIA Exemption 5 to materials composed and supplied by outside contractors." At the same time, the court concluded that the records "constitute *inter*-agency memoranda created by a government agency." The description of the documents as "*inter*-agency memoranda" is incorrect. APTMetrics is not a government agency. *See* 5 U.S.C. §§ 551(1) (defining agency), 552(f) (same). Therefore, the exchange of records between it and the FAA cannot be an inter-agency exchange. *See Black's Law Dictionary* (10th Ed. 2014) (defining the preposition "inter" as "among"). Under the consultant corollary, to which the district court's reasoning alludes, the documents would be classified as "*intra*-agency."

We have yet to adopt the consultant corollary in this Circuit, though we have previously acknowledged it.**[4]** Here, the role of APTMetrics as a consultant to the FAA is undisputed. Therefore, we must now decide whether to adopt the consultant corollary to Exemption 5. Because the consultant corollary is contrary to Exemption 5's text and FOIA's purpose to require broad disclosure, we decline to do so.

The consultant corollary contravenes Exemption 5's plain language. Statutory interpretation "begins with the plain language of the statute." *Eleri v. Sessions*, 852 F.3d 879, 882 (9th Cir. 2017) (citation and internal quotation marks omitted). "When an examination of the plain language of the statute, its structure, and purpose clearly reveals congressional intent, our judicial inquiry is complete." *Id.* (citation and internal quotation marks omitted). Exemption 5 protects only "inter-*agency* or intra-*agency* memorandums or letters." 5 U.S.C. § 552(b)(5) (emphasis added). An "agency," with some exceptions not relevant here, is defined as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1). More specifically, an agency

---

**[4]** In an unpublished memorandum disposition, *Center for Biological Diversity v. Office of U.S. Trade Representative*, 450 F. App'x 605, 607 (9th Cir. 2011) (mem. disp.), agency communications with private third parties had been withheld under Exemption 5. After expressing that "[t]his fact alone suggests [the communications] do not meet Exemption 5's threshold requirement[,]" we nonetheless described that certain third-party communications may fall within Exemption 5 under the consultant corollary. *Id.* at 608. The case was then remanded to develop the record on the relationships between the agency and the third parties. *Id.* at 609. Because the record was unclear as to whether the third parties were "consultants," the case did not require us to decide the validity of the consultant corollary in this Circuit.

"includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). A third-party consultant, then, is not an agency as that word is used in FOIA, generally, or Exemption 5, particularly. Indeed, "neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders." *Klamath*, 532 U.S. at 9.

In contrast, two other FOIA exemptions explicitly protect communications with outsiders. Exemption 4 applies to "trade secrets and commercial or financial *information obtained from a person* and privileged or confidential." 5 U.S.C. § 552(b)(4) (emphasis added). Exemption 8 applies to information "contained in or related to examination, operating, or condition reports prepared by, *on behalf of, or for the use of an agency* responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8) (emphasis added). That these exemptions contemplate information from third parties, while Exemption 5 is limited to "inter-agency or intra-agency" communications, makes clear that Exemption 5 applies only to records that originate and remain inside the government. *See Weber*, 465 U.S. at 804 ("We therefore simply interpret Exemption 5 to mean what it says."). Thus, the consultant corollary expands Exemption 5's protections beyond the plain text of FOIA.

The dissent attempts to resolve the consultant corollary's tension with the statutory text by conflating the term "intra-agency memorandums," as used in Exemption 5, with "agency records," as used elsewhere in FOIA. The dissent also construes "intra-agency" to mean records held within an agency, even though they may have originated with a third-

party consultant. But that renders superfluous the term "*inter*-agency" as used alongside "intra-agency" in Exemption 5. And, if Congress intended Exemption 5 to extend to all "agency records," it would have used that term, *see* 5 U.S.C. § 552(f)(1), (2), rather than the narrower "inter-agency or intra-agency memorandums or letters," § 552(b)(5).

In addition to contravening the statutory text, the consultant corollary also undermines the purpose of FOIA. The dissent insists that civil discovery rules dictate the scope of Exemption 5. But FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Accordingly, the exemptions are construed narrowly. *See id.* at 361; *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *Abramson*, 456 U.S. at 630. Congress has instructed as much with the statutory language that the exemptions do "not authorize withholding of information or limit the availability of records to the public, *except as specifically stated* in this section." 5 U.S.C. § 552(d) (emphasis added). The consultant corollary allows the government to withhold more documents than contemplated by Exemption 5, contrary to FOIA's policy favoring disclosure and its mandate to interpret exemptions narrowly.

The cases adopting the consultant corollary do little to confront its inconsistency with both the text and purpose of FOIA. The opinion in which it originates, the 1971 D.C. Circuit case *Soucie v. David*, 448 F.2d 1067 (D.C. Cir.

1971), does not even address the statutory text. *Soucie* concerned a FOIA request for the Garwin Report, an "independent assessment" on supersonic transport aircraft produced by a panel of outside experts for the Office of Science and Technology. *Id.* at 1070. The issue on appeal was whether the Office of Science and Technology was an "agency" subject to FOIA's disclosure requirements. *Id.* at 1075. The D.C. Circuit held that the Office of Science and Technology was an agency and remanded the case for the district court to consider whether the Garwin Report fell within any of FOIA's exemptions. *Id.* at 1075–76. First, though, the court posited that Exemption 5 may apply. *Id.* at 1076–77. In a footnote, the court summarily reasoned that Exemption 5's purpose supported applying it to records prepared by third-party consultants:

> The rationale of the exemption for internal communications indicates that the exemption should be available in connection with the Garwin Report even if it was prepared for an agency by outside experts. The Government may have a special need for the opinions and recommendations of temporary consultants, and those individuals should be able to give their judgments freely without fear of publicity. A document like the Garwin Report should therefore be treated as an intra-agency memorandum of the agency which solicited it.

*Id.* at 1078 n.44. The court cited no authority for these propositions. Nor did it acknowledge, never mind reconcile, FOIA's text and purpose.

In *Wu v. National Endowment for Humanities*, 460 F.2d 1030, 1032 (5th Cir. 1972), the Fifth Circuit cited *Soucie*'s unsourced footnote to hold that Exemption 5 protected evaluations prepared by outside experts for the National Endowment for the Humanities. *Wu* reasoned that protecting third-party communications furthered Exemption 5's policy of "encouraging full and candid intra-agency discussion, and shielding from disclosure the mental processes of executive and administrative officers." *Id.* at 1034 (quoting *Int'l Paper Co. v. Fed. Power Comm'n*, 438 F.2d 1349 (2d Cir. 1971)). But, like *Soucie*, the opinion did not reconcile its holding with FOIA's broader policy favoring disclosure or Exemption 5's textual limits.

Together, *Soucie* and *Wu* form the basis for the consultant corollary. Later opinions adopting the consultant corollary cite to the two cases. *See Hoover v. Dep't of the Interior*, 611 F.2d 1132, 1138 (5th Cir. 1980); *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 83 (2d Cir. 1979); *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1970); *Martin Marietta Aluminum, Inc. v. Gen. Servs. Admin.*, 444 F. Supp. 945, 949 (C.D. Cal. 1977). Or, they cite to cases that in turn cite *Soucie* and *Wu*. *See Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665 (1st Cir. 1982) (citing *Hoover*, 611 F.2d at 1137–38). That other courts readily signed onto the consultant corollary does not compensate for its shaky foundation. And relying on the doctrine's proliferation to adopt it now would be the result of judicial inertia, rather than reasoned consideration.

The Supreme Court acknowledged, but did not adopt, the consultant corollary in the 2001 case *Department of Interior v. Klamath Water Users Protective Association*. In *Klamath*, the Court commented that "[a]lthough neither the terms of the exemption nor the statutory definitions say anything

about communications with outsiders, some Courts of Appeals have held that in some circumstances a document prepared outside the Government may nevertheless qualify as an 'intra-agency' memorandum under Exemption 5." *Id.* at 9 (citations omitted). The Court also quoted the dissent in *Department of Justice v. Julian*, 486 U.S. 1 (1988), in which Justice Scalia accepted the consultant corollary's purposive reading of Exemption 5:

> It is textually possible and . . . in accord with the purpose of the provision, to regard as an intra-agency memorandum one that has been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency—*e.g.*, in a capacity as employee or consultant to the agency, or as employee or officer of another governmental unit (not an agency) that is authorized or required to provide advice to the agency.

*Klamath*, 532 U.S. at 9–10 (quoting *Julian*, 486 U.S. at 18 n.1 (Scalia, J., dissenting)). Curiously, the *Klamath* Court did not discuss the propriety of the consultant corollary and neither adopted nor rejected it.

Instead, the Court explained that the term "intra-agency" in Exemption 5 is not "purely conclusory" and warned that there is "no textual justification for draining the first condition of independent vitality." *Id.* at 12 (majority opinion). The Court then narrowly held that, "at the least[,]" the consultant corollary does not apply to communications from interested parties who consult with the government for their own benefit. *Id.* at 12, 12 n.4. In a footnote, the Court

admonished two D.C. Circuit opinions, *Public Citizen, Inc. v. Department of Justice*, 111 F.3d 168 (D.C. Cir. 1997) and *Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980), as "instances of intra-agency consultants that arguably extend beyond what we have characterized as the typical examples." *Id.* at 12 n.4. However, the Court provided no further guidance as to the proper scope of Exemption 5. *Klamath*, then, appears to instruct that courts should be more rigorous in analyzing whether an outside party's records satisfy Exemption 5's threshold "intra-agency" requirement before analyzing whether the records are privileged. *See Hunton & Williams v. Dep't of Justice*, 590 F.3d 272, 283–84 (4th Cir. 2010) (describing that *Klamath* requires the first step of Exemption 5 to be "more carefully scrutinized").

Since the Supreme Court's decision in *Klamath*, the Fourth and Tenth Circuits have adopted the consultant corollary. *See Hanson v. USAID*, 372 F.3d 286 (4th Cir. 2004); *Stewart v. Dep't of Interior*, 554 F.3d 1236, 1245 (10th Cir. 2009). Most recently, though, the Sixth Circuit rejected it in *Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017).

*Lucaj* concerned a FOIA request for documents that the FBI had sent to foreign governments to secure their assistance in investigating Lucaj's role in political attacks in Montenegro. *Id.* at 543–44. The FBI argued that the documents were protected from disclosure under Exemption 5 pursuant to the "common interest doctrine," which "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Id.* at 545 (quoting *Hunton & Williams*, 590 F.3d at 277–78). The Sixth Circuit, relying on *Klamath*'s instruction that "the first

condition of Exemption 5 is no less important than the second," applied a strict statutory interpretation to conclude that documents sent by a government agency to a foreign government are neither "intra-" nor "inter-agency" memoranda within the meaning of the Exemption. *Id.* at 547 (quoting *Klamath*, 532 U.S. at 9). The court then explicitly rejected the consultant corollary as contrary to Exemption 5's plain text and the mandate to construe FOIA's exemptions narrowly. *Id.* at 549. In doing so, the court relied on *Klamath*'s instruction not to ignore Exemption 5's threshold inquiry.

*Lucaj* reads *Klamath*'s focus on the threshold question under Exemption 5 as essentially foreclosing the consultant corollary. We disagree that *Klamath* can be interpreted so conclusively. Rather, we understand *Klamath* as leaving open whether the consultant corollary is a proper application of Exemption 5. We conclude that it is not. As described above, the consultant corollary is contrary to Exemption 5's text and FOIA's policy of broad disclosure, and its legal foundation—the unsourced footnote in *Soucie*—is tenuous at best. While the dissent is critical of the Sixth Circuit decision, *Lucaj* provides a reasoned discussion of the interplay between the consultant corollary, the language of Exemption 5, and the purpose of FOIA. That is more than can be said of *Soucie* and its progeny.

Proponents of the consultant corollary may argue that rejecting it allows parties to use FOIA to circumvent civil litigation privileges. Indeed, Congress enacted the exemptions because it "realized that legitimate governmental and private interests could be harmed by release of certain types of information." *Abramson*, 456 U.S. at 621. Even so, full disclosure is the guiding principal in interpreting FOIA. *See Rose*, 425 U.S. at 361. We are not

convinced that the potential harm to the government warrants adopting the consultant corollary's broad reading of Exemption 5. While today's holding means some privileged documents from third-party consultants will be subject to disclosure under FOIA, the dissent's suggestion that it will open the floodgates is speculative. And, absent the consultant corollary, agencies can still avoid disclosure under Exemption 5 by keeping potentially privileged material within the government. If this proves unworkable, as the dissent argues, the proper remedy lies with Congress, not the courts.

Because we reject the consultant corollary, the records at issue can no longer be considered "intra-agency" documents, and Exemption 5 does not apply. Thus, we need not address whether the records would be privileged under Exemption 5's second step.

## C. Scope of the FOIA Request

Rojas challenges the district court and the FAA's interpretation of the scope of his FOIA request. Specifically, Rojas argues that the FAA has an obligation under FOIA to retrieve any responsive documents, such as the underlying data to the summaries, held by APTMetrics. However, FOIA places no such obligation on an agency.

FOIA empowers federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). As discussed above, an agency is "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent

regulatory agency." 5 U.S.C. § 552(f)(1). A "record" is "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format" along with "any information . . . that is maintained for an agency by an entity under Government contract, for the purposes of records management." 5 U.S.C. § 552(f)(2). FOIA does not define "agency record." *See Forsham v. Harris*, 445 U.S. 169, 178 (1980).

The Supreme Court has held that for a document to be an "agency record" under FOIA, the agency must (1) "'either create or obtain' the requested materials," and (2) "the agency must be in control of the requested materials at the time the FOIA request is made." *Tax Analysts*, 492 U.S. at 144–45 (quoting *Forsham*, 445 U.S. at 182). That an agency has a right to obtain a document does not render the document an agency record. *Id.* at 144. "FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Id.* (emphasis in original) (quoting *Forsham*, 445 U.S. at 186).

To be sure, the bright line definition of agency records as those "which have been *in fact* obtained" allows the government to avoid disclosure by parking documents with third parties. We share the concerns Justice Brennan articulated when he dissented from the adoption of a bright line definition. Specifically, Justice Brennan expressed that

> the understandable tendency of agencies to rely on nongovernmental grantees to perform myriad projects distances the electorate from important information by one more step. If the records of such organizations, when drawn directly into the regulatory process,

> are immune from public inspection, then
> government by secrecy must surely return.

*Forsham*, 445 U.S. at 191 (Brennan, J., dissenting). These concerns are particularly pertinent in this case, which involves a federal agency delegating its duty to establish hiring criteria to an outside consultant. But we are bound by the Supreme Court's precedent. And under that precedent, the records held by APTMetrics that have not been transmitted to the FAA are beyond the reach of FOIA. That the FAA is not obligated to search APTMetrics for responsive documents does not relieve its duty to conduct a reasonable search of its own records, as discussed above.

## CONCLUSION

The district court erred by entering summary judgment in favor of the FAA. The FAA has not shown it conducted a search reasonably calculated to uncover all relevant documents in response to Rojas's FOIA request, and we join the Sixth Circuit in rejecting the consultant corollary to Exemption 5. We **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion. Rojas's motion for judicial notice is **DENIED**.

---

CHRISTEN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Rojas cannot use the Freedom of Information Act (FOIA) to access materials that the FAA does not actually possess, and I agree that the scope of the FAA's in-house search for responsive documents was inadequate.

I disagree with the majority's rejection of the "consultant corollary"—a doctrine adopted by seven of our sister circuits. The "consultant corollary" acknowledges that Exemption 5's protection of privileged documents extends to materials prepared by an agency's retained consultants. This allows agencies to shield privileged materials from disclosure to the same extent they would in discovery. By rejecting the consultant corollary, the majority gives the FOIA a truly capacious scope. After today, the fact that a document was prepared in anticipation of litigation by a government-retained consultant will present no barrier to anyone who wants to access it by filing a FOIA request.

Our court has not had an occasion to squarely address the consultant corollary in a published opinion. Now that the question is presented, we should follow the First, Second, Fourth, Fifth, Eighth, Tenth, and D.C. Circuits, all of which adopted the consultant corollary to shield work product generated by the government's outside consultants in anticipation of litigation.[1] Because the majority's decision rejects the corollary, upends basic discovery rules, and disregards the careful balance Congress struck when it enacted the FOIA, I respectfully dissent.

\* \* \*

The circumstances in which the present dispute arose provide critical context for its resolution. In 2012, the FAA

---

[1] *See Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971); *Gov't Land Bank v. Gen. Serv. Admin.*, 671 F.2d 663, 666 (1st Cir. 1982); *Lead Indus. Ass'n Inc. v. OSHA*, 610 F.2d 70, 83 (2nd Cir. 1979); *Hanson v. U.S. Agency for Int'l. Dev.*, 372 F.3d 286, 292–93 (4th Cir. 2004); *Hoover v. U.S. Dept. of the Interior*, 611 F.2d 1132, 1137 (5th Cir. 1980); *Brockway v. Dept. of Air Force*, 518 F.2d 1184, 1194 (8th Cir. 1982); *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1245 (10th Cir. 2009).

undertook a comprehensive review of the Air Traffic Control Specialist selection and hiring process and hired APTMetrics, a human resource consulting firm, to assist in that effort. APTMetrics modified a biographical assessment tool the FAA used to test job-related characteristics. In 2014, the FAA implemented a refined process for selecting air traffic controllers, incorporating APTMetrics's recommendations. Following the implementation of the FAA's new process, an unsuccessful applicant filed an Equal Employment Opportunity Commission (EEOC) complaint, seeking to represent a class of unsuccessful air traffic controller applicants. That putative class is represented by Mr. Rojas's counsel. The FAA then revised the biographical assessment for use in 2015, and APTMetrics worked on those revisions.

Meanwhile, in anticipation of the pending EEOC litigation, the FAA asked the Chief Operating Officer of APTMetrics to prepare a summary of its validation work. APTMetrics delivered an initial summary in December of 2014 and supplemented it the following month. By August of 2015, a second group of unsuccessful applicants filed a complaint and petition for class certification, this time challenging the 2015 biographical assessment. The second putative class is also represented by Mr. Rojas's lawyer.

Mr. Rojas applied, but was not hired, to be an air traffic control specialist in 2015. He later filed a FOIA request seeking information about the biological assessment's empirical validation and its "evaluation and creation and scoring."[2] The FAA conducted a search and found three

---

[2] Mr. Rojas's request sought three categories of information, but the parties stipulated that the only category at issue in this appeal is the request for information regarding: "[T]he empirical validation of the

documents that APTMetrics created at the FAA's request and in anticipation of litigating the EEOC complaints.  The FAA withheld the three documents pursuant to FOIA's Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).    The FAA claimed the withheld documents were protected attorney-client communications and work product, and that they were pre-decisional and deliberative.

Mr. Rojas filed an administrative appeal and, eventually, a complaint in district court challenging the denial of his FOIA request.  The district court conducted an *in camera* review, ruled that the FAA's search for records was reasonable, and granted summary judgment in favor of the government.  The court described the withheld documents as "summaries of [1] the [air traffic control] hiring process, [2] the 2015 biographic assessment, and [3] the validation process and results."

Our review of the district court's order granting summary judgment is governed by several well-established principles that the majority does not dispute.  First, we know that materials prepared in anticipation of litigation and at the request of an attorney are protected work product and need not be produced in litigation.  *See*, *e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).  Second, in the context of civil discovery, we have long recognized that work-product protection extends to materials created by consultants or third-party experts.   *See*, *e.g.*, *United States v. Nobles*,

---

biographic assessment noted in the rejection notification," including "any report, created by, given to, or regarding APTMetrics's evaluation and creation and scoring of the assessment."

422 U.S. 225, 238 (1975); *see also* Fed. R. Civ. P. 26(b)(4) (exempting draft expert reports, communications with expert witnesses, and consulting experts materials from discovery). Third, the Supreme Court has explained that FOIA's Exemption 5 precludes the disclosure of information that would be privileged in litigation. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799–802 (1984) (explaining that certain air crash safety investigation materials could be withheld pursuant to FOIA's Exemption 5 because courts had previously recognized that those materials were privileged in discovery). These principles alone dictate the appropriate resolution in this case: because the validation summaries would not be available to Mr. Rojas in discovery, he cannot acquire them through a FOIA request.[3]

The majority concludes that Exemption 5 only shields materials generated by federal agencies in-house, not those created by the government's retained consultants. Seven other circuits have considered this argument and rejected it. These circuits all adopted the "consultant corollary," agreeing that Exemption 5 reflects Congress's determination that the government is entitled to the same litigation privileges afforded to other parties. Indeed, the propriety of the consultant corollary was foreshadowed by well-recognized precedent defining the scope and proper application of litigation privileges and protections. The Supreme Court has "consistently rejected" the suggestion that parties in litigation with the government "can obtain through the FOIA material that is normally privileged" or

---

[3] The district court said the validation summaries were "*inter*-agency memorandums," but its reasoning (and supporting authority) clearly related to "*intra*-agency" memoranda. For reasons explained here, the withheld documents plainly qualify for Exemption 5 protection as "intra-agency" memoranda.

use FOIA requests "to supplement civil discovery." *Id.* at 801–02 ("We do not think that Congress could have intended that the weighty policies underlying discovery privileges could be so easily circumvented."). All of these authorities lead to the conclusion that the FOIA does not require federal agencies to produce retained experts' work product created in anticipation of litigation.

## I.

Congress enacted the Freedom of Information Act in 1966 as a means of increasing transparency and broadening access to government materials. "FOIA 'sets forth a policy of broad disclosure of Government documents in order to ensure an informed citizenry[.]'" *Ante* at 15 (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)). But long before Congress passed the FOIA, courts and legislatures recognized that parties to litigation are entitled to shield certain materials from discovery and disclosure. For example, there is no question that litigants need not produce materials covered by the attorney-client privilege or documents that constitute attorney work-product, including those prepared by the party's agents and consultants. *See*, *e.g.*, *Hickman*, 329 U.S. at 510–11 (work product materials are protected); *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964) (attorney-client privilege is protected); *Nobles*, 422 U.S. at 238 (work product encompasses material prepared by attorney's investigators and other agents in anticipation of litigation); *see also* Fed. R. Civ. P. 26(b)(4) advisory committee's note to the 1970 amendment.

Congress was well aware of discovery privileges when it drafted the Freedom of Information Act, and it recognized that certain exceptions to FOIA's disclosure regime were necessary in order for the government's many agencies to operate effectively. *See* S. Rep. No. 89-813, at 9 (1965)

(acknowledging that government efficiency "would be greatly hampered" if agencies were "forced to 'operate in a fishbowl.'"). FOIA's exemptions reflect careful balancing between the benefits of transparency and the government's need to maintain the confidentiality of some types of records. For example, FOIA exemptions allow federal agencies to withhold classified materials (Exemption 1), trade secrets (Exemption 4), and internal personnel and medical files (Exemption 6). *See generally* 5 U.S.C. § 552(b)(1)–(9).

Exemption 5 has been described as the most important of FOIA's exemptions.[4] It specifically precludes the disclosure of inter- or intra-agency materials "that would not be available by law" to adverse parties in litigation. 5 U.S.C. § 552(b)(5); *see Weber*, 465 U.S. at 801. Rojas does not dispute that Exemption 5 shields attorney work-product created by government agency staff, and this concession is not surprising. There was nothing novel about Exemption 5's carve out; without it, the FOIA would have obliterated a common law rule dating back decades. *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 20 (1983) ("It is well established that this exemption was intended to encompass the attorney work-product rule.").

Given this backdrop, the resolution of Rojas's appeal should be straightforward: he is not entitled to the APTMetrics documents because the FAA's consultant prepared them at the FAA's request, and in anticipation of litigation. This result would be the same whether the materials were prepared by an FAA employee sitting in an

---

[4] *See* 33 Fed. Prac. & Proc. Judicial Review § 8441 (1st ed.) ("The Freedom of Information Act provides nine exemptions from the disclosure requirements. . . . These are, in order of importance, 5, 7, 1, 3, and 2.").

FAA cubicle, or by a consultant hired to do the same thing. We need look no further than Exemption 5 to know that the FAA was not required to disclose the three withheld documents. *See* 5 U.S.C. § 552(b)(5).

## II.

The majority reviews the text of Exemption 5, decides that consultants do not qualify as "agencies," and concludes that FAA's consultant-prepared materials are not "intra-agency memorandums" within the scope of Exemption 5. *See Ante* at 13–14.

I read the statute differently. Exemption 5 states that FOIA's disclosure requirement "does not apply" to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). The Supreme Court has explained that the phrases "an agency" and "the agency" in Exemption 5 refer to the same entity. *See Weber*, 465 U.S. at 798 (explaining that a plaintiff could not access privileged documents through a FOIA request because "they would not be available by law to a party other than [the Air Force] in litigation with [the Air Force].") (alternation in original) (internal quotation marks omitted).

Nothing in Exemption 5's text requires that the materials be created by the agency itself, nor do the statute's definitions dictate that an "intra-agency memorandum" includes *only* those materials that agency employees (as opposed to retained consultants) prepare in-house. Here, the FAA specifically engaged APTMetrics to use its expertise to create biometric summaries on behalf of the FAA. The FAA took possession, reviewed and relied on the summaries, then stored and maintained them. For all intents and purposes, the three withheld documents are the FAA's memoranda and

we should treat them just as we would treat a memorandum created by an internal FAA employee.

An agent acts "on the principal's behalf," meaning the agent's acts *are the principal's acts*. *See Agency*, Black's Law Dictionary (10th ed. 2014). The nature of an agent-principal relationship requires that the "agent's actions have legal consequences for the principal[,]" *id*., and we have recognized that consultants are agents whose statements can bind their paying clients. *See Reid Bros. Logging Co. v. Ketchikan Pulp Co*., 699 F.2d 1292, 1306 (9th Cir. 1983) (finding that a consultant's report, distributed to a party in litigation, was properly introduced as a party admission under Fed. R. Evid. 801(d)(2)(C)). Because the FAA retained APTMetrics as a consultant and paid it to prepare the sought-after biometric assessment summaries in anticipation of class action litigation, those summaries should be treated as if FAA employees prepared them. Unless we ignore the entirety of the statute, its legislative history, analogous case law, and controlling case law addressing the limits of permissible discovery, the documents must be afforded Exemption 5 protection.

The actual text of Exemption 5 easily encompasses the requested materials because Exemption 5 protects "*intra*-agency memorandums[.]" Of course, "intra" simply means "within," *see intra*, The American Heritage Dictionary of the English Language (1978), and we know that the FAA paid APTMetrics to prepare the summaries on its behalf. The agency received the summaries, and as far as we can tell it has been maintaining and storing them ever since. The responsive documents are therefore "within" the FAA in both a physical and proprietary sense, so the FAA's consultant-created memoranda are "intra-agency memorandums," strictly and textually speaking.

FOIA's broader statutory framework also indicates that the FAA's consultant-prepared materials are entitled to Exemption 5's protection. The FOIA defines "record" and explains that the materials that would qualify as "an agency record" include information "maintained by an agency in any format[.]" 5 U.S.C. § 552(f)(2). This is consistent with the Supreme Court's opinion in *Forsham v. Harris*, where the Court defined FOIA's "agency records" (through reference to similar statutes) as materials "*made or received* by an agency[,]" and "*created or received*" by the government. 445 U.S. 169, 182–86 (1980) (emphasis in original). *Forsham* further explained that "[t]he legislative history of the FOIA abounds with other references to records *acquired by* an agency." *Id*. at 184 (emphasis added). There is no dispute that the FAA received APTMetrics's summaries and that it remains in possession of them. As such, those summaries necessarily constitute "agency records" pursuant to FOIA's definitions.

Today's opinion divorces "agency records" from "intra-agency memorandums," and reaches the paradoxical conclusion that the three withheld documents are not "intra-agency memorandums" even though they certainly fall within the definition of "agency records." It is difficult to conjure an adequate rationale or a holistic reading of the statutory text by which all "agency records" fall within FOIA's scope but only an arbitrary subset of privileged "agency records" are protected by Exemption 5.

In the majority's view, the consultant corollary ignores FOIA's distinction between intra- and inter-agency materials. *Ante* at 14. But distinguishing between those two categories is simple if the consultant corollary is properly applied: Exemption 5 encompasses materials prepared in-house *or* by an agency's consultant, and the materials are

either "intra-" or "inter-agency" depending on whether they are shared outside the agency.

Parties engaged in litigation with the government will use today's ruling to circumvent the government's claims of work product, attorney-client communication or any other privilege recognized by our discovery rules, even though the federal rules *expressly bar* discovery into those kinds of materials, *see* Fed. R. Civ. P. 26(b)(4)(D), and despite the long-established rule that the government is entitled to the same litigation privileges as other parties. *In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998) ("Congress intended that agencies should not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of the FOIA.")[5]; *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) ("It is equally clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 and that such a privilege had been recognized in the civil discovery context by the prior case law.").

Today's decision only disadvantages the government; the privileges afforded to non-government parties will remain intact because only the government responds to FOIA requests. Thus, the decision simultaneously puts the government at a stark litigation disadvantage, departs from the Supreme Court's observation that "Exemption 5 simply incorporates civil discovery privileges[,]" including those "well recognized in the case law[,]" *Weber*, 465 U.S. at 799, and disregards a clear congressional directive that the

---

[5] Quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

government should receive the same discovery privileges as other parties.

Notwithstanding these concerns, the majority rejects the corollary because it is "not convinced that the potential harm to the government warrants adopting the consultant corollary's broad reading of Exemption 5." *Ante* at 20–21. Respectfully, this is insufficient in light of the decades-long track record of courts uniformly upholding the government's discovery privileges, which Congress expressly preserved by adopting Exemption 5. *See Weber*, 465 U.S. at 801 ("We do not think that Congress could have so easily intended that the weighty policies underlying discovery privileges could be [] easily circumvented [through a FOIA request]").[6]

The majority suggests that "absent the consultant corollary, agencies can still avoid disclosure under Exemption 5 by keeping potentially privileged material within the government." *Ante* at 21. But that suggestion has it backwards. The government *is* keeping APTMetrics's work product, which is why the materials fall within the scope of the search for responsive documents. If the documents were only possessed by APTMetrics, they would not be subject to the FOIA at all. *Forsham*, 445 U.S. at 186. If the majority means that agencies can avoid disclosure by creating materials in-house, that theory fails to acknowledge that dozens of federal agencies must rely on the expertise of outside consultants to perform specialized tasks. Regrettably, today's opinion will likely dissuade agencies

---

[6] Curiously, the majority quotes *Weber* to justify its approach. *Ante* at 14. But *Weber* is hardly supportive of the majority's analysis. Indeed, contrary to the majority's holding here, *Weber* explained that the plain language of Exemption 5 incorporated discovery privileges and allowed agencies to shield privileged materials. 465 U.S. at 799–801.

from seeking helpful expertise from outside consultants in the first place.

## III.

There is nothing new or novel about the consultant corollary, as evidenced by the dearth of case law supporting today's decision. Circuit courts have been applying the consultant corollary since at least 1971. Just five years after Congress enacted the FOIA, the D.C. Circuit adopted the consultant corollary in *Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971) (explaining that an outside expert's report should "be treated as an intra-agency memorandum of the agency which solicited it" for purposes of Exemption 5). Since that decision, the First, Second, Fourth, Fifth, Eighth, and Tenth Circuits have adopted the consultant corollary. *See Gov't Land Bank v. Gen. Serv. Admin.*, 671 F.2d 663, 666 (1st Cir. 1982) (exempting from FOIA disclosure a property appraisal performed by independent contractor); *Lead Indus. Ass'n Inc. v. OSHA*, 610 F.2d 70, 83 (2nd Cir. 1979) (exempting from FOIA disclosure private consultant's analysis of lead levels provided to agency); *Hanson v. U.S. Agency for Int'l. Dev.*, 372 F.3d 286, 292–93 (4th Cir. 2004) (exempting from FOIA disclosure a document prepared by outside attorney as attorney work product); *Hoover v. U.S. Dept. of the Interior*, 611 F.2d 1132, 1137 (5th Cir. 1980) (holding that an appraisal report by an outside expert constituted an intra-agency document for purposes of Exemption 5); *Brockway v. Dept. of Air Force*, 518 F.2d 1184, 1194 (8th Cir. 1982) (exempting from FOIA disclosure statements provided to agency by outside witnesses due to pre-trial privilege); *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1245 (10th Cir. 2009) (holding that consultant's materials were properly withheld pursuant to

Exemption 5 because "[f]or purposes of [a FOIA] analysis" the consultant "functioned akin to an agency employee").

The majority criticizes the first consultant corollary case, *Soucie v. David*, for failing to cite supportive authority for the consultant corollary, *ante* at 16, but *Soucie* was a case of first impression. *See Fong v. Immigration & Naturalization Serv.*, 308 F.2d 191, 194 (9th Cir. 1962) ("The case is one of first impression and neither party has been able to cite cases or decisions in point."). More importantly, the majority never rebuts the reasoning seven of our sister circuits have proffered to justify this corollary to Exemption 5—i.e., that "[t]he Government may have a special need for the opinions and recommendations of temporary consultants, and those individuals should be able to give their judgments freely without fear of publicity." *Soucie*, 448 F.2d at 1078 n.44. Nor could it. In the context of civil discovery, courts have long accepted that agencies benefit from the assistance of outside experts and that the unnecessary risk of disclosure may put a damper on the government's ability to acquire the knowledge and expertise it requires. *See*, *e.g.*, *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1162 (D.C. Cir. 1987) ("[F]ederal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling their knotty complexities. . . . To force an exposure is to stifle honest and frank communication between agency and expert by inhibiting their free exchange of thought") (internal quotation marks omitted); 37A Am. Jur. 2d *Freedom of Information Act* § 182 (2019) ("Agencies have a special need for the opinions and advice of temporary consultants, and the quality of consultants' advice, like that of agency employees, may suffer if the advice is made public."). This case is a good example. It is doubtful that decision makers at the FAA would have engaged in a full and candid

conversation about the efficacy of the biometric assessment or ways it might be improved if they were aware that their communications would be subject to disclosure in the prospective class action litigation. And there is no question the public is best served if the most refined selection criteria are used to choose applicants best qualified to perform the exquisitely sensitive positions held by air traffic controllers.**[7]**

The only circuit to express doubt about the consultant corollary is the Sixth Circuit. In *Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541, 546–47 (6th Cir. 2017), the Sixth Circuit seemed to reject the rule, except there were no consultants at issue in *Lucaj*. The plaintiff in *Lucaj* was arrested in Montenegro, and the FBI believed that he was connected to terrorist attacks. *Id.* at 543. Because Lucaj believed the United States played a role in his arrest, he sent a FOIA request to the FBI. *Id.* at 543–44. The FBI produced some responsive documents, but it withheld two that the Department of Justice had *sent to foreign law enforcement agencies*. *Id.* at 544–45. The Sixth Circuit rejected the FBI's

---

**[7]** The fact that consultant-prepared materials may constitute "intra-agency memorandums" for purposes of Exemption 5 does not mean that agencies are obligated to search for responsive FOIA materials held only by consultants. As the majority explains, the Supreme Court's decision in *Forsham v. Harris* forecloses Rojas's challenge to the FAA's failure to search APTMetrics's files in response to his FOIA request. I share the majority's concern about the possibility that the FOIA could be circumvented by storing materials offsite with agency contractors. But I agree with the majority that we are bound by *Forsham*, and it dictates that Rojas cannot access APTMetrics's offsite documents through a FOIA request.

I also agree with the majority's conclusion that the FAA has failed to show that it undertook an adequate in-house search. *See Ante* at 9–11. However, the proper scope of a FOIA search is distinct from whether materials falling within that scope may be exempted from disclosure.

claim that the documents were exempted from the FOIA and ordered them produced.  In the process of issuing this ruling, the Sixth Circuit purported to reject the consultant corollary, *id.* at 546–47, but because no consultants or consultant-created materials were at issue in *Lucaj*, its brief rejection of the consultant corollary can only be regarded as dictum. Notably, the majority is conspicuously wary of *Lucaj*, *see ante* at 20 (disagreeing with *Lucaj*'s review of applicable Supreme Court precedent), but it subscribes to the same "plain text" interpretation of "intra-agency" that the Sixth Circuit endorsed.  By relying on a conclusion that was merely dictum in *Lucaj*, today's opinion creates a circuit split.

The majority also cites *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1 (2001), but that case lends no support to its position.  In *Klamath*, the dispute involved competing claims by the Klamath Tribe and others to certain water rights.  *Id.* at 5–6. The federal government solicited the Klamath Tribe's input on a potential global resolution.  *Id.*  Other litigants sought access to the Klamath Tribe's memorandum via the FOIA, and on appeal the Court considered whether the Department of Interior could rely on Exemption 5 and the consultant corollary to withhold it.  *Id.* at 6–7.  The Court rejected the Department's claim that it could withhold the Tribe's settlement proposal under Exemption 5—but not because it rejected the consultant corollary.  On the contrary, the Court acknowledged that in the cases where courts have applied the consultant corollary, "the records submitted by outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done."  *Id.* at 10.  The Court went on to recognize that in those circumstances "consultants may be enough like the agency's own personnel to justify calling

their communications 'intra-agency.'" *Id*. at 12. Ultimately, the Court rejected the Department of Interior's claimed exemption because the Tribe was decidedly *not* acting on the government's behalf. Far from it, the Tribe was an interested party advocating for its own interests. *Id*. at 11–15. *Klamath* is more a benediction of the consultant corollary than an indictment—after all, the question whether the corollary is correct is antecedent to whether it applies in a particular situation. Indeed, at least one circuit reads *Klamath* as the Court's tacit affirmance of the consultant corollary. *See Stewart*, 554 F.3d at 1244 ("In *Klamath*, after recognizing that Exemption 5 extends to government agency communications with paid consultants, the Court declined to analogize tribal communications to consultant communications.").

At bottom, though seven circuit courts have expressly adopted the consultant corollary and the Supreme Court's *Klamath* decision has responded favorably (albeit implicitly) to the rule, only one other circuit has rejected the corollary, in dictum. Against that ledger, the majority marshals a crimped view of the term "intra-agency" and reaches a conclusion that casts aside the need to read the FOIA as an integrated whole, as well as decades of persuasive authority.

## IV.

Today's opinion creates a lopsided loophole that prejudices only the federal government. *Weber*, 465 U.S. at 801. The consultant corollary fits logically with the text and purpose of the FOIA and ensures that government agencies can appropriately shield privileged and sensitive materials from FOIA responses, just as they would in discovery. I would adopt the consultant corollary, and respectfully dissent from the majority's decision.